**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EVANGELINA G.,**[1] | ) | |
| | ) | **No. 23 CV 15826** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **FRANK BISIGNANO, Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | **August 27, 2026** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION and ORDER**

Evangelina G. seeks disability benefits based on physical and mental impairments. She brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for benefits. For the following reasons, Evangelina's remand request is denied:

**Procedural History**

Evangelina filed her benefits application in July 2021 claiming disability as of March 12, 2020. (Administrative Record ("A.R.") 21.) After her application was denied initially and upon reconsideration at the administrative level, she sought and was granted a hearing before an Administrative Law Judge ("ALJ"), at which she and a vocational expert testified. (Id. at 38-73.) The ALJ concluded in January 2023 that Evangelina is not disabled. (Id. at 18-37.) The Appeals Council denied Evangelina's request for review, (id. at 1-7), making the ALJ's denial the final decision of the

---

1 Pursuant to Internal Operating Procedure 22, the court uses Evangelina's first name and last initial in this opinion to protect her privacy to the extent possible.

Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Evangelina then filed this action seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 9).

**Analysis**

Evangelina argues that the ALJ failed to: (1) supply substantial evidence to support her assigned residual functional capacity ("RFC"); (2) incorporate her mild mental impairments into her RFC; (3) properly evaluate her subjective symptom statements; and (4) compare the specific duties of her past work with the RFC. (See generally R. 17, Pl.'s Mem.) The court disagrees that the ALJ erred.

**A. Symptom Assessment**

The court turns first to Evangelina's complaints about the ALJ's symptom assessment because that analysis affects other aspects of the ALJ's decision, including the RFC assessment. An ALJ's symptom evaluation is entitled to great deference and may only be reversed where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). But the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). That said, the court will not disturb a symptom evaluation that is logically based on specific findings and evidence. *See Murphy*, 759 F.3d at 815. The ALJ's assessment in this case meets this low bar.

In concluding that Evangelina's statements concerning the "intensity, persistence and limiting effects" of her symptoms were "not entirely consistent" with medical and other record evidence, the ALJ considered objective evidence, along with Evangelina's self-reports, treatment, and daily activities. (See A.R. 27-28.) Evangelina claims that the ALJ failed to analyze how her daily activities "spoke to her ability to sustain full-time work, or why they undercut [her] allegations." (R. 17, Pl.'s Mem. at 12-13 (citing A.R. 26, 28).) But the ALJ weighed Evangelina's statements and determined that her daily activity reports "were inconsistent with the medical evidence and other evidence in the record," (A.R. 28), and adequately "explain[ed the] perceived inconsistencies," (R. 17, Pl.'s Mem. at 13 (quoting *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011))). For example, the ALJ acknowledged Evangelina's allegations that she needed three to four daily naps and could not do laundry, go downstairs, cook, carry a gallon of milk, go for "major grocery shopping with[out] her husband," focus, remember appointments, or stand in line. (A.R. 26, 28.) But the ALJ noted her statements that she could walk to a nearby store, do light cooking, sweep, and talk on the phone with friends, which he found conflicted with claims that she could not perform household chores. (Id. at 26 (citing id. at 781), 32 (citing id. at 234-41, 779-84).)

In addition to these inconsistencies, the ALJ relied on medical evidence, including records reflecting improvements to Evangelina's physical impairments, to discredit her symptom statements. (See id. at 28-30 (citing id. at 643 (July 2020 report showing she had no physical activity limitations), 670 (March 2021 report

noting no kidney dialysis), 685 (August 2021 examination noting she "no longer had CKD and her remaining kidney function improved"), 837-38 (January 2022 report noting no physical complaints other than constipation and breast tenderness)).). Indeed, the ALJ cited specific findings and evidence to support his analysis. (See id. (citing id. at 631 (June 2020 examination noting Evangelina "was feeling better and less fatigued"), 659 (November 2020 examination reporting increased energy), 671-72 (March 2021 report noting some chronic fatigue), 679-80 (June 2021 examination noting some fatigue complaints), 693 (October 2021 examination reporting improved energy and physical activity), 768-78, 838-39, 862, 969-71 (July 2020, November 2020, March 2021, January 2022, February 2022, March 2022, and July 2022 examinations revealing "normal" results and inconsistent claims of fatigue), 829 (same), 861 (March 2022 examination noting some fatigue)), 968-71 (July 2022 examination noting "she denied fatigue")).) As such, the court declines to hold the ALJ to something higher than the governing substantial evidence standard, which he satisfied here. *See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (stating that an ALJ is "subject to only the most minimal of articulation requirements").

While Evangelina asserts that the ALJ ignored evidence that she claims supports her need to nap during the day, (R. 17, Pl.'s Mem. at 13-14), the ALJ "need [not] discuss every detail in the record" as it relates to her alleged fatigue, *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (internal citation omitted). The ALJ sufficiently explained the inconsistencies between Evangelina's statements and the

record evidence and concluded that her alleged need to nap was "not fully supported by the record, which shows only intermittent, occasional complaints of fatigue that seem related to her physical impairments." (A.R. 28 (citing id. at 56 (testifying that she could not stand in line at the store on only one occasion), 57 (testifying that her fatigue is medication related), 68 (same), 267-69 (July 2022 functional report describing her nap-related statements)).) The ALJ's symptom assessment need not be "flawless," and here it was not "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)).

Evangelina also criticizes the ALJ for failing to give any weight to her strong work history. (R. 17, Pl.'s Mem. at 14.) While a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work," *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (internal citations omitted), "work history is just one factor among many, and it is not dispositive," *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (internal citation omitted). It is true that the ALJ did not refer to Evangelina's work history in his symptom assessment. But the court declines to remand on this ground because "the ALJ's silence is not enough to negate the substantial evidence supporting the adverse credibility finding." *Loveless*, 810 F.3d at 508.

**B. RFC Assessment**

Evangelina next argues that the ALJ's RFC determination lacks evidentiary support because it fails to accommodate her osteoporosis and need for daily naps. (R. 17, Pl.'s Mem. at 3-8.) An ALJ's RFC analysis must "say enough to enable review

of whether the ALJ considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), and must provide a "logical bridge" between the evidence and the conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). But the ALJ is not required to address every piece of evidence, *Knox v. Astrue*, 327 Fed. Appx. 652, 657-58 (7th Cir. 2009), and need only "minimally articulate" his reasoning to build an accurate and logical bridge from the evidence to his conclusions, *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The ALJ satisfied the required standard here.

The ALJ determined that Evangelina can perform less than the full range of sedentary work and can "occasionally" lift/carry 10 pounds, "frequently" lift/carry less than 10 pounds, "push and pull as much as she can carry and lift," "occasionally" climb ramps and stairs, and walk and stand for two hours total per workday. (A.R. 26.) The ALJ concluded that Evangelina has no sitting limitations but cannot climb ladders, ropes, or scaffolds and cannot crawl or handle objects that vibrate. (Id.) When crafting this RFC, the ALJ found the state agency physicians' light RFC assessment "partially persuasive," (id. at 31 (citing id. at 74-82, 84-93 (limiting Evangelina to "light with occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing; and occasional crawling"))), but concluded that Evangelina's osteoporosis "warrant[s] additional limits," including a two-hour limitation to standing and walking and postural and handling limitations, (id. at 29, 31). For support the ALJ pointed to Evangelina's treating physician's

impression that Evangelina's December 2021 DEXA scans showed "interval worsening [of her osteoporosis] at the hip and wrists." (Id. at 29.)

Evangelina argues that the ALJ "improperly and selectively assessed" the DEXA scans to "arrive at a speculative RFC finding" because no doctor offered an opinion interpreting the scans. (R. 17, Pl.'s Mem. at 4-5 (citing A.R. 889).) Evangelina asserts that the scans are akin to new medical evidence and, as such, require further scrutiny because the state agency physicians did not explicitly discuss them. (R. 17, Pl.'s Mem. at 4-5 (citing *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)); see also R. 29, Pl.'s Reply at 2.) Had the ALJ submitted the scans to medical scrutiny, Evangelina posits that further limitations in reaching, handling, and fingering may have resulted in a disability finding. (R. 17, Pl.'s Mem. at 5 (noting that her prior work "required frequent reaching, handling, and fingering").)

Evangelina is correct that the ALJ may not "play doctor" by using his own "lay opinions to fill evidentiary gaps in the record," *Chase v. Astrue*, 458 Fed. Appx. 553, 556-57 (7th Cir. 2012), or "substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record," *Clifford v. Apfel*, 227 F.3d 863, 870-72 (7th Cir. 2000). But Evangelina's argument rests on the faulty assumption that the ALJ "somehow overstepped his authority by not seeking expert advice to deduce a proper RFC from the record." *Michael B. v. Berryhill*, No. 18 CV 236, 2019 WL 2269962, at *6 (N.D. Ill. May 28, 2019).

For starters, the ALJ relied on expert medical providers who considered the scans. Specifically, the ALJ relied on Evangelina's treating physician, Dr. John Courtney, who determined that the 2021 DEXA scans showed a "worsening" of Evangelina's osteoporosis in her hips and wrists based on a comparison with her 2019 DEXA scans. (A.R. 29 (citing id. at 670, 889)); *see also Michael B.*, 2019 WL 2269962, at *7 (finding that the ALJ did not "interpret" the claimant's MRI by accurately citing to the treating physician's notes that the MRI showed "a small spinal canal," "'moderate' stenosis," "'slight' disc protrusion," and "'mild' facet joint hypertrophy"). Further, the state agency physicians on reconsideration reviewed the December 2021 DEXA scans and Dr. Courtney's corresponding impression in rendering a functional assessment. (See, e.g., A.R. 84-86 (August 3, 2022 review by state agency physician on reconsideration identifying Evangelina's osteoporosis as an alleged impairment and acknowledging receipt of "all of [her United Health Services] records," including the 2021 DEXA scans)). That the state agency physicians did not explicitly discuss the DEXA scans does not mean that those physicians did not consider them, *see, e.g.*, *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 626 (7th Cir. 2025) (finding the ALJ properly relied on a state agency opinion where the state agency physician considered but did not explicitly discuss certain treatment records); *Biangamano v. Astrue*, No. 10 CV 7122, 2011 WL 6328220, at *14 (N.D. Ill. Dec. 14, 2011) (finding that the claimant did not show that the state agency physician failed to consider certain treatment notes where the physician reviewed the entire medical record), and does not transform the scans into "new evidence" requiring further medical scrutiny.

Even if neither state agency physician reviewed the scans—as Evangelina speculates—she "has not provided any evidence that the [scans] would have changed the doctors' opinions." *Keys v. Berryhill*, 679 Fed. Appx. 477, 481 (7th Cir. 2017). While she argues that a medical review of the scans "may have resulted" in further functional limitations, (R. 17, Pl.'s Mem. at 5-6), no medical evidence supports this assertion because she proffered no physician statements that "provide[d] any particular functional opinion to assess," (A.R. 31 (citing id. at 768-78, 779-84)), and her records post-dating the 2021 DEXA scans reveal that Evangelina demonstrated full strength, normal gait, and normal range of motion with no musculoskeletal deficiencies, (see id. at 30 (citing id. at 768-78 (January 4, 2022 consultative examination demonstrating normal gait, 5/5 strength, normal finger dexterity, and intact range of motion), 853 (February 2022 examination noting "normal" physical evaluation "including her strength throughout, her sensation and gait"), 969-71 (July 2022 examination noting "normal" physical evaluation, including normal gait))); *see also Neashell G. v. O'Malley*, No. 22 CV 3151, 2024 WL 4710886, at *4 (N.D. Ill. Nov. 7, 2024) (finding medical evidence post-dating the state agency physicians' opinions did not require medical scrutiny because examinations post-dating this evidence showed normal strength and range of motion). As such, the DEXA scans do not amount to "potentially decisive [] evidence" that would require an updated medical opinion. *Compare Goins*, 764 F.3d at 680 (remanding where ALJ failed to submit "new and potentially decisive medical evidence" to medical scrutiny where the evidence "undermined the reasoning" of the consulting physician's opinion upon

which the ALJ relied) *with Baptist v. Kijakazi*, 74 F.4th 437, 442 (7th Cir. 2023) (concluding that the ALJ was not required to seek an updated medical opinion when the plaintiff's condition "was similar to when the state agency consultants reviewed her file").

Further, the ALJ was not required to obtain a medical opinion that matches his RFC determination because the RFC is a legal decision the ALJ has exclusive authority to make. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." (citing 20 C.F.R. § 404.1527(d))); *see also Vang v. Saul*, 805 Fed. Appx. 398, 401-02 (7th Cir. 2020) (affirming the ALJ's RFC assessment, which rejected the treating physician's and state agency physicians' opinions because the ALJ "weigh[ed] the evidence and conclude[d] that the record did not support" a disability finding). Here, "the critical question is not whether the ALJ's RFC conclusions match a medical expert's opinion item-by-item but whether substantial evidence supports what the ALJ ultimately concluded about the claimant's RFC." *Michael B.*, 2019 WL 2269962, at *6. The court finds that it does.

The ALJ relied in part on the state agency physicians' opinions that Evangelina could perform light work with certain limitations, as was within his authority. *See Rice*, 384 F.3d at 370 (citing 20 C.F.R. § 404.1527(f)(2)(i)). The ALJ then relied on substantial evidence, including diagnostic imaging, treatment notes, and Evangelina's testimony, to reduce the state agency physicians' light RFC to the less than sedentary level to accommodate her osteoporosis and fatigue. (See A.R. 27-

32 (outlining Evangelina's medical history from 2020 to 2022).) That the ALJ assessed greater restrictions than those the state agency physicians recommended demonstrates his "careful consideration" of the record. *Tutwiler v. Kijakazi*, 87 F.4th 853, 859-60 (7th Cir. 2023) (finding that the ALJ's more restrictive RFC rested on substantial evidence where the ALJ "weighed the competing evidence, assessed testimony from [the claimant] and the vocational expert, and considered the opinions of treating physicians"); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("This finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence [the claimant] presented.").

Specifically as to Evangelina's osteoporosis, the ALJ acknowledged that her treating physicians found her physical examinations "normal" with respect to gait, strength, finger dexterity, and range of motion. (See A.R. 29-30 (citing id. at 643-44 (July 2020 "normal" physical examination with "no limits in physical activity"), 660 (November 2020 "normal" physical examination), 670 (March 2021 "generally normal" physical examination), 838-39 (January 2022 "normal" physical examination), 768-78 (January 2022 consultative examination demonstrating "normal gait," "no difficulty squatting," good muscle mass and tone in extremities, "5/5 strength throughout, including grip strength," "fine finger dexterity was normal," no assistive device use, and "range of motion was intact"), 853 (February 2022 physical examination "normal, including her strength throughout, her sensation and gait"), 862 (March 2022 "normal" physical examination), 969-71 (July 2022 physical

examination "within normal limits, including a normal gait")).) But the ALJ noted that "evidence of osteoporosis . . . according to diagnostic imaging" showed "some improvement in areas and worsening in other areas," (id. at 28; see also id. at 29 (citing id. at 675 (April 2021 report noting osteoporosis improvements to hip and lumbar spine with wrist worsening), 889 (December 2021 DEXA scan report "showed interval worsening [of her osteoporosis] at the hip and the wrist"), 893 (June 2022 bilateral knee x-rays showed "mild genu valgus at the left knee and osteopenia/osteoporosis"), 1003 (September 2022 left shoulder x-ray "showed rotator cuff impingement and narrowing and early osteoarthritis degenerative changes of the AC joint"))), and accommodated this impairment with a "reduction of lifting/carrying and pushing/pulling to the sedentary exertional level, standing/walking only two hours in a workday, postural limits" and handling limits, (id. at 29; see also id. at 30-31). The ALJ's reliance on this medical evidence provides substantial evidence to support his accommodation for Evangelina's osteoporosis. *See Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (affirming the ALJ's RFC determination which gave the claimant "'the benefit of the doubt' by accounting for her fibromyalgia-like symptoms . . . despite 'such findings having not been recorded on . . . a regular basis'" (internal citations omitted)); *see also, e.g.*, *Pamela S. v. Kijakazi*, No. 20 CV 607, 2022 WL 1185604, at *5 (N.D. Ill. April 21, 2022) (affirming the ALJ's RFC assessment which reduced the state agency physicians' recommendations to accommodate the claimant's hypertension where no physician provided a functional assessment).

Regarding her fatigue, Evangelina argues that the ALJ erred because the RFC did not accommodate her need for naps. (R. 17, Pl.'s Mem at 6-8 (citing A.R. 56-57, 251, 267-68, 278 (identifying her fatigue-related statements)).) But the ALJ found her testimony was "not fully supported by the record, which shows only intermittent, occasional complaints of fatigue that seem related to her physical impairments." (A.R. 27.) The ALJ nevertheless "considered" her fatigue "in the reduction to the less than sedentary exertional level," (id. at 27), with standing and walking limited to two hours per day, (id. at 31), based on medical evidence that her fatigue complaints persisted but improved over time, (id. at 28-30). Substantial evidence thus supports this accommodation.

Evangelina argues that *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016), requires the ALJ to "explain[] why" the reduction to the less than sedentary exertional level related to her need to nap. (R. 17, Pl.'s Mem. at 6-7.) But *Allensworth* is inapposite. There the Seventh Circuit found a "gaping hole" between the record evidence and the ALJ's RFC reduction to "light" work to accommodate the claimant's fatigue because the ALJ overlooked uncontradicted medical evidence that hypersomnia required the claimant to limit driving and the ALJ failed to "explain[] why . . . [a work environment] would be less fatiguing than . . . driving." *Id.* An evidentiary "hole" does not exist here because Evangelina presented no medical evidence corroborating her need for daily naps, relying solely on subjective symptom statements which, as discussed above, the ALJ properly deemed were not credible. (A.R. 27); *see Green v. Saul*, 781 Fed. Appx. 522, 528 (7th Cir. 2019) (affirming the

ALJ's RFC and finding that it need not accommodate the claimant's alleged need for daily naps because this "requirement [was] not supported by evidence other than her testimony, which the ALJ did not credit"); *Imse v. Berryhill*, 752 Fed. Appx. 358, 362 (7th Cir. 2018) (finding the ALJ properly disregarded the claimant's testimony regarding daily naps because "no physician . . . has ever indicated that there was a medical reason why she would need to lay down/nap as frequently as alleged").

In fact, a "fundamental problem" with Evangelina's complaints regarding the ALJ's osteoporosis and fatigue accommodations is that "she offered no opinion from any doctor to set . . . any other limits[] greater than those the ALJ set." *Gedatus v. Saul*, 994 F.3d 893, 904-05 (7th Cir. 2021) (internal citation omitted); *see also Fanta v. Saul*, 848 Fed. Appx. 655, 659 (7th Cir. 2021) (finding that the claimant failed to "point to any objective evidence or medical opinions in the record that support stricter limitations" than those the ALJ set). The ALJ specifically noted that Evangelina "did not provide any particular functional opinion" from a consultative examiner, (A.R. 31 (citing id. at 768-778, 779-84)), despite having "the burden to supply that evidence," *Krug v. Saul*, 846 Fed. Appx. 403, 406 (7th Cir. 2021). Because Evangelina did not "identify medical evidence that would justify further restrictions," she "is not entitled to remand." *Sosh v. Saul*, 818 Fed. Appx. 542, 546 (7th Cir. 2020) (quoting *Loveless*, 810 F.3d at 508); *see also Jozefyk*, 923 F.3d at 498 (holding that any error in the ALJ's RFC was harmless because the claimant cited no evidence of greater limitations and did not testify to any additional work restrictions).

## C. Mental Limitations

Evangelina also argues that the ALJ failed to accommodate her mild limitations in concentrating, persisting, or maintaining pace ("CPP"), or explain why the ALJ rejected her CPP-related statements. (R. 17, Pl.'s Mem. at 8-11.) The ALJ must "consider" all medical impairments, including those that are non-severe, 20 C.F.R. § 404.1545(a)(2)-(3), but he need only include RFC limitations if substantial evidence supports them, *see Felts v. Saul*, 797 Fed. Appx. 266, 268-70 (7th Cir. 2019) (affirming the ALJ's RFC finding, which included no mental limitations despite a mild paragraph B limitation because such limitations were inconsistent with the record); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (stating that "the ALJ's RFC assessment must incorporate all of the claimant's limitations [in CPP] supported by the medical record" (internal citation and quotation omitted)).

Here, the ALJ's decision makes clear that he "explain[ed] why [other] findings were more probative" than the consultative examiner's observations or Evangelina's statements. (R. 17, Pl.'s Mem. at 10 (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010)).) For instance, he assessed a mild CPP limitation based on her allegations that she could not focus and felt fatigued, "spoke excessively and her speech was sometimes circumstantial during the psychological consultative examination," and performed her serial sevens poorly. (A.R. 25; see also id. at 24 (citing id. at 779-84 (January 2022 psychological consultative examination)).) But the ALJ noted that Evangelina's fatigue complaints were inconsistent and wholly related to her physical impairments, and that her speech appeared redirectable, she

repeated five digits forward and three digits backward to her consultative examiner, and she managed her own funds. (Id.) The ALJ found persuasive the state agency physicians' opinions that her mental impairments were non-severe, (id. at 25), because they caused no more than a mild limitation in one functional area and "the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities," (id. at 26 (citing 20 C.F.R. § 404.1520a(d)(1))).

In fashioning his RFC, the ALJ considered Evangelina's CPP limitations but found that her statements regarding "memory loss" and "inability to focus" were "not fully supported by the record" because "there were no regular issues with concentration or memory." (Id. at 27.) He acknowledged the consultative examiner's depression and anxiety diagnoses, (id. at 24 (citing 779-84)), and medications prescribed to treat those conditions, (id. at 31). But he noted an inconsistency between this evidence and the treatment records because "[s]he oftentimes denied depressive symptoms during treatment for her physical impairments." (Id. at 31 (citing id. at 548-762).) While her treating psychologists provided medical source statements describing her CPP issues, (id. at 895-97 (stating she could not perform full-time work or maintain concentration), 898-900 (stating that her emotional health prevented work)), the ALJ did not find them persuasive—a finding Evangelina does not contest—because she provided "no regular mental status examinations [] showing any recurring [mental health] issues," (id. at 31 (citing id. at 895-900); see also id at 68 (notifying Evangelina's counsel at the hearing that "there are virtually no explicit

treatment records psychologically . . . other than a summary[] from [her treating psychologist]")), and her records pertained almost exclusively to physical impairments that had improved, (id. at 31 (noting that her reports indicated "she was stressed over her physical impairments"); see also id. at 28-30 (describing evidence regarding physical improvement, normal physical examinations, and inconsistent fatigue complaints)). Moreover, the ALJ did not credit her treating psychologist's reliance on a GAF depression assessment because "[t]he Commissioner has declined to endorse the GAF scale" as the scores "have no 'direct connection to the severity requirements [of the] mental disorders listings.'" (Id. at 31 (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) (alteration in original))); *see also Felts*, 797 Fed. Appx. at 269 (finding that a low GAF score does not indicate that an RFC requires any mental limitations because "GAF scores do not reflect the clinician's opinion of functional capacity" (internal citations and quotations omitted)). The ALJ sufficiently considered Evangelina's non-severe CPP limitations in his analysis and his decision not to include in the RFC a mental limitation was based on substantial evidence. *See, e.g.*, *Monique B. v. Saul*, No. 19 CV 652, 2020 WL 4208112, at *13 (N.D. Ill. July 22, 2020) (finding that the claimant did "not direct[] the [c]ourt to any law requiring the ALJ to include mental RFC limits whenever a mild impairment at Step Two is found").

Evangelina takes umbrage with the ALJ's failure to include a mental limitation based on her failed serial sevens from her January 2022 psychological consultative examination, which she claims "directly related to her [CPP] issues."

(R. 17, Pl.'s Mem. at 9.) But the ALJ specifically considered her serial sevens performance along with other mental health symptoms and found them inconsistent with the record, which lacks evidence of concentration issues. (See A.R. 24-25, 27, 31.) Evangelina has not identified any medical evidence that demonstrates how her failure to complete her serial sevens, or any other CPP symptom, requires any specific accommodation. (Id. at 31 (stating that neither the consultative examiners nor her treating psychologist provided any functional opinions (citing 895-900))); *see Best v. Berryhill*, 730 Fed. Appx. 380, 382 (7th Cir. 2018) ("There is no error [in an RFC assessment] when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'" (quoting *Rice*, 384 F.3d at 370)). Substantial evidence supports the ALJ's RFC assessment, and the court declines to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester*, 920 F.3d at 510 (citation and quotation omitted).

**D. Past Work**

Evangelina relies on *Smith v. Barnhart*, 388 F.3d 251, 251 (7th Cir. 2004), in arguing that the ALJ erred because he failed to compare the specific duties of her past jobs with her RFC. (R. 17, Pl.'s Mem. at 11-12.) But this reliance is misplaced. In *Smith*, the Seventh Circuit held that an ALJ improperly equated the claimant's past relevant work with sedentary work and required the ALJ on remand to consult a vocational expert ("VE") to determine whether jobs exist that the claimant could perform. *Smith*, 388 F.3d at 252-53. The ALJ here did not commit the same error

because he relied on testimony from Evangelina and the VE when concluding that she could perform her past work as an insurance clerk, collections clerk, and patient scheduler as actually performed. (See A.R. 32.) The ALJ elicited testimony from Evangelina regarding the responsibilities and demands of each job, (id. at 43-48), and the VE testified that a hypothetical person with her RFC could perform her past work, (id. at 62-64 (confirming that the VE's opinions were consistent with the DOT).) Accordingly, the ALJ did not err in relying on Evangelina's and the VE's testimony when finding her capable of performing her past relevant work. *See Stark v. Astrue*, 278 Fed. Appx. 661, 667 (7th Cir. 2008) (holding that an ALJ is entitled to rely on a VE's testimony in comparing a claimant's past relevant work to the RFC in the absence of apparent conflicts with the DOT).

**Conclusion**

For the foregoing reasons, Evangelina's remand request is denied, and the Commissioner's decision is affirmed.

**ENTER:**

**Young B. Kim**
**United States Magistrate**